UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAWSON EUGENE STRICKLAND** | **DOCKET NO. 2:22-cv-5185**<br>**SECTION P** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TIMOTHY HOOPER** | **MAGISTRATE JUDGE LEBLANC** |

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus (doc. 1) filed by petitioner Lawson Eugene Strickland (hereinafter referred to as "Strickland" or "petitioner") through counsel. The petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. The respondent opposes the petition. Doc.12. The petition is now ripe for review.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court. For reasons stated below, **IT IS RECOMMENDED** that all claims be **DENIED** and **DISMISSED**.

### I.
#### BACKGROUND

*A. Conviction*

The defendant, Lawson Eugene Strickland, was charged by grand jury indictment dated December 2, 1992, with the offenses of: 1) conspiracy to commit armed robbery, a violation of La.R.S. 14:26 and La.R.S. 14:64, 2) armed robbery, a violation of La.R.S. 14:64, and 3) first-degree murder, a violation of La.R.S. 14:30 A (1). Doc. 12, att. 1, p. 36. An amended indictment was filed on June 14, 1993. *Id*. at p. 250. A jury found Strickland guilty as charged on all counts on June 17, 1993, and on June 18, 1993, the jury unanimously recommended that the defendant be

sentenced to death for the crime of first-degree murder. On August 26, 1993, the trial court sentenced the defendant to forty-five years at hard labor for conspiracy to commit armed robbery and death for the offense of first-degree murder. *Id*. at p. 1796. The defendant was resentenced on October 6, 1993, to the same sentence previously imposed on each count. *Id*. at pp. 1808-1810.

### B. Direct Appeal

On direct appeal to the Louisiana Supreme Court, Strickland's conviction for murder and his death sentence were affirmed. *See State v. Strickland*, 94-25 (La. 11/01/96), 683 So.2d 218. The defendant did not appeal his conviction for conspiracy to commit armed robbery. Even though the court conditionally affirmed the sentence of death, the case was remanded for a hearing on the adequacy of defense counsel's representation during the penalty phase of the trial. *Id*. at 240. On May 4, 2000, on motion of the State, the defendant's death penalty sentence was vacated, and the defendant was sentenced to life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. *See* doc. 1, p. 2.

### C. State Collateral Review

On May 1, 2001, the defendant filed a counseled application for postconviction relief in the trial court. Doc. 12, att. 3, pp. 872-892. On June 18, 2001, the defendant filed a motion requesting that the trial court order the State to file its procedural objections to his application and ordering the defendant to file an answer to those objections within fourteen (14) days of receipt of the State's procedural objections. *Id*. at pp. 851-853. The defendant also requested that the court rule on the objections and response after receipt thereof, and that the State be given thirty (30) days from the finality of the trial court's ruling to file its answer on the merits to the defendant's claims. *Id*. at p. 855. The State agreed to the defendant's motion, without objection, and the trial court

issued an Order in conformity with the defendant's motion on June 19, 2001. *Id*. at p. 857. The State filed its procedural objections on July 10, 2001. *Id*. at pp. 851-853.

The defendant, however, failed to respond to the State's procedural objections. Having received no response from the defendant, the trial court issued no ruling on the State's objections, as per the defendant's motion and agreement. The defendant filed no other motions or pleadings and made no contact with either the trial court or prosecutor until his new counsel, more than nineteen (19) years later, filed a response to the State's procedural objections in the trial court on April 16, 2020. *Id*. at pp. 693-711. In its opposition to the instant petition, the State notes that defense counsel made no mention of the intervening nineteen years and failed to give any explanation, whatsoever, for the failure to timely file a response, as ordered by the trial court in 2001.

On July 30, 2020, the trial court granted all the State's procedural objections, except numbers four (4) and five (5) and ordered the State to file an answer to those claims. *Id*. at p. 588. Before the State filed its answer, the defendant sought a writ application to the Louisiana Third Circuit Court of Appeal on November 2, 2020. *Id*. at pp. 1107-1155.

On January 13, 2021, the Louisiana Third Circuit Court of Appeal stayed the matter and remanded the case to the district court with orders that the State file answers to the defendant's remaining post-conviction claims. *Id*. at p. 1240. On January 20, 2021, the trial court ordered the State to answer defendant's claims numbered 4 and 5. *Id*. at p. 1239. On February 22, 2021, the State replied, contending that defendant's post-conviction claims were abandoned, repetitive and without merit. Doc. 12, att. 5, pp. 290-309. On March 5, 2021, the trial court denied defendant's claims as abandoned and repetitive. *Id*. at p. 285.

On November 16, 2021, the court of appeal issued two separate rulings, one denying the defendant's application for writ of review submitted by the defendant on October 30, 2020, and assigned docket number KW 20-521, which pertained to his post-conviction claims 1,2,3,6,7, and 8. *Id*. at p. 2; (*State v. Strickland,* an unpublished writ opinion bearing docket number 20-521 (La. App. 3 Cir. 11/16/21)). The second ruling of the court of appeal, also dated November 16, 2021, was issued under docket number KW 21-242, and involved the defendant's post-conviction claims numbered 4 and 5, and the trial court's March 5, 2021, ruling thereon. *Id*. at p. 3; (*State v. Strickland*, an unpublished writ opinion bearing docket number 21-242 (La. App. 3 Cir. 11/16/21)). Both rulings denied the defendant's claims as abandoned for failure to prosecute them for over nineteen (19) years. The defendant filed an application for supervisory writs with the Louisiana Supreme Court on December 16, 2021, and on February 8, 2022, that court denied the defendant's application, stating simply "Writ application denied." *State v. Strickland*, 2021-1886 (La. 02/08/22), 332 So.3d 669.

### D. *Federal Habeas Petition*

The instant petition was filed in this court on March 9, 2022, in the Middle District of Louisiana (doc. 1) and transferred to this Court on September 2, 2022 (doc. 2). The petition raises the following issues: "(1) the State courts erroneously dismissed Mr. Strickland's application for post-conviction relief as abandoned without ordering a hearing to determine the cause of the 19-year delay in proceedings; (2) Mr. Strickland's conviction was obtained in violation of his right to due process because the State withheld exculpatory evidence; (3) Mr. Strickland's conviction was obtained in violation of his right to the effective assistance of counsel because his lawyer failed to investigate and present evidence; (4) Mr. Strickland's conviction was obtained in violation of his rights to due process and counsel when the State allowed Kimberly Atkins to falsely testify and

trial counsel failed to impeach; and (5) Mr. Strickland's conviction violates his right to due process and equal protection because his indictment was the product of an unconstitutionally constituted grand jury." Doc. 1.

## II.
### LAW

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. *Exhaustion and Procedural Default*

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore, we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

#### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a

procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### 2. *Procedural Default*

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. *General Principles*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

To overcome AEDPA's re-litigation bar, a state prisoner must shoehorn his claim into one of its narrow exceptions. *Langley v. Prince*, 962 F.3d 145, 155 (5th Cir. 2019). As relevant here, he must show the state court's adjudication of the claim "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.*; 28 U.S.C. § 2254(d)(1).

The first exception to the re-litigation bar—the "contrary to" prong—is generally regarded as the narrower of the two. *Id*. A state-court decision is "contrary to" clearly established federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if" it resolves "a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. (citing *Terry Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000).

The other exception to § 2254(d)(1)'s relitigation bar is the "unreasonable application" prong, which is almost equally unforgiving. *Id*. at 156. The Supreme Court has repeatedly held that it is not enough to show the state court was wrong. *Id.; see also, Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." (quotation omitted)); *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007) ("The question under AEDPA is not whether a federal court believes

the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Rather, the re-litigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (citing *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (quotation omitted). In other words, the unreasonable-application exception asks whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the state court. *Id*. (citing *Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016) (per curiam); *see also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (asking "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court" (quotation omitted)).

Overcoming AEDPA's re-litigation bar is necessary, but not sufficient, to win habeas relief. Even after overcoming the bar, the prisoner still must "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Id*. (citing *Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (quoting 28 U.S.C. § 2254(a)); *see also Berghuis v. Thompkins,* 560 U.S. 370, 390 (2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review [under] § 2254(a).").

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.
### ANALYSIS

*A. Timeliness*

Petitioner's conviction became final on June 2, 2000, when his 90-day window for seeking review in the United States Supreme Court expired. Sup. Ct. R. 13. Accordingly, 336 days accrued

against § 2244(d)'s one-year limitations period before he filed his application for post-conviction relief in the trial court on May 4, 2001. Giving petitioner the benefit of tolling the limitations period until the Louisiana Supreme Court's decision on February 8, 2022, 29 days remained on his federal habeas clock when the instant petition was filed on the March 9, 2022. The Court finds, therefore, that the petition is timely.

### B. Failure to Exhaust

Habeas petitioners cannot collaterally attack state court convictions in federal court until all available state court remedies have been exhausted. *Rose v. Lundy*, 455 U.S. 509 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir. 1983). This requirement is not a jurisdictional bar but a procedural one erected in the interest of comity providing state courts the first opportunity to pass upon and correct alleged constitutional violations. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Shute v. Texas*, 117 F.3d 233 (5th Cir. 1997). This jurisprudential mandate has been codified at 28 U.S.C. § 2254(b)(1). Exhaustion entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner. *Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir.1989); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056 (1983). When a petitioner has raised a claim in a procedural context "in which its merits will not be considered," he has not "fairly presented" the claim to the state courts and, accordingly, has not satisfied the exhaustion doctrine. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir.1989).

In the present matter, petitioner did not "fairly" present the federal habeas claims presented herein to the Louisiana Supreme Court, as that Court did not review those claims on the merits. The Louisiana Third Circuit Court of Appeal denied petitioner's claims as abandoned for failure to prosecute them for over nineteen (19) years. The Louisiana Supreme Court denied writs without

comment. It may be presumed that the state's highest court relied on the grounds for dismissal cited by the Louisiana court of appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (holding that where the last reasoned state court opinion on a federal claim explicitly imposes a procedural default, there is a presumption that a later decision rejecting the same claim without opinion did not disregard the procedural bar and consider the merits.). Thus, the claims raised herein remain unexhausted because they were not "fairly presented" to the Louisiana Supreme Court.

A ruling from this court at this juncture would preempt the state court from performing its proper function. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982) (the exhaustion requirement is "designed to protect the state courts' role in the enforcement of federal law and prevent the disruption of state judicial proceedings").

### C. Technical Exhaustion and Procedural Default

Since petitioner failed to fairly present the substance of his federal claims in a procedurally correct manner to the Louisiana Supreme Court, state court remedies remain unexhausted. It appears, however, that these claims, while unexhausted, are to be considered "technically" exhausted since petitioner cannot return to the Louisiana courts to re-litigate these claims.

A petitioner has "technically exhausted" his federal claim if he fails to properly and timely present it to the state courts and is thereafter barred from seeking relief in those courts. *Magouirk v. Phillips,* 144 F.3d 348 (5th Cir.1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-33 (1986) and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995)). Therefore, these claims must now be considered procedurally defaulted. *See Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir.1993) (cited with approval in *Sones v. Hargett*, 61 F3d 410, 416 (5th Cir. 1995)), ("[I]f it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review").

### a. *Cause and Prejudice*

When state remedies are rendered unavailable by the petitioner's own procedural default, federal courts are normally barred from reviewing those claims. *See Coleman v. Thompson,* 501 U.S. 722 (1991). "[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas...." *Id*. at 735 n. 1.

Federal courts may look beyond the procedural default, but only if the habeas corpus petitioner shows cause for the default and actual prejudice, or if he shows that the failure to reach the merits of the claim will result in a complete miscarriage of justice. *Coleman, supra; Wainwright v. Sykes*, 433 U.S. 72 (1977); *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir.2002), *cert. denied*, 537 U.S. 829 (2002).

"Cause" in this context means that "some objective factor external to the defense" prevented the petitioner from complying with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In *Murray v. Carrier*, 477 U.S. 478 (1986), the Supreme Court explained that "cause" in the context of a procedural default refers to an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." *Murray,* 477 U.S. at 488 (internal citations omitted).

Petitioner does not allege any external factor that presented him from complying with the state's procedural rule. In addition to asserting that he was not required to comply with the briefing agreement drafted by his defense counsel, as discussed above, Strickland also contends that the 19-year delay in prosecuting his case was attributable to his abandonment by retained counsel and that the state courts acted without authority when they ruled that he abandoned his post-conviction claims. Doc. 1, att. 1, p. 17. Petitioner claims that he should not be prejudiced by retained counsels' failure to notify the petitioner of their actions and do so without formally withdrawing from the case. *Id*. at pp. 14-15.

In *Shinn v. Ramirez*, - - U.S. - -, 142 S.Ct. 1718,1735, 212 L. Ed2d 713, (2022) the Court held that:

> A prisoner "bears the risk in federal habeas for all attorney errors made in the course of the representation." *Coleman*, 501 U.S. at 754, 111 S.Ct. 2546. And, because there is no constitutional right to counsel in state postconviction proceedings, a prisoner must ordinarily "bea[r] responsibility" for all attorney errors during those proceedings, *Williams*, 529 U.S. at 432, 120 S.Ct. 1479, including responsibility for counsel's negligent failure to develop the state postconviction record. This Court's prior cases make this point clear. *See, e.g., Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318; *Williams*, 529 U.S. 420, 120 S.Ct. 1479; *Holland v. Jackson*, 542 U.S. 649, 124 S.Ct. 2736, 159 L.Ed.2d 683 (per curiam). Thus, a prisoner is "at fault" even when state postconviction counsel is negligent. Pp. 1735 – 173.

Further, in *Davila v. Davis*, - - U.S. - -, 137 S.Ct. 2058, 198 L. Ed2d 603, (2017), the Court found:

> It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). An error amounting to constitutionally ineffective assistance is "imputed to the State" and is therefore external to the prisoner. *Murray, supra*, at 488, 106 S.Ct. 2639. Attorney error that does not violate the Constitution, however, is attributed to the prisoner "under well-settled

> principles of agency law." *Coleman, supra*, at 754, 111 S.Ct. 2546. It follows, then, that in proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default. Thus, in *Coleman*, this Court held that attorney error committed in the course of state postconviction proceedings—for which the Constitution does not guarantee the right to counsel, *see Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (plurality opinion)—cannot supply cause to excuse a procedural default that occurs in those proceedings. 501 U.S., at 755, 111 S.Ct. 2546.

The Respondent notes that the genesis of the eventual finding on state post-conviction review that the petitioner abandoned his post-conviction claims was his attorneys' strategic decision not to file a response to the State's procedural objections in the case. Contrary to petitioner's assertion that he was not informed of counsel's actions in failing to file the agreed-upon response, Mr. Lorenzi, one of petitioner's retained post-conviction attorneys sent a letter to the petitioner dated August 28, 2001, stating that he and Phyllis Mann, petitioner's other retained counsel, "are not required to file a response" and that they "felt it preferable not to file a response but to instead wait until the judge rules on the objections." Doc. 12, att. 5, p. 25.  Lorenzi's stated reason for not responding was "[i]In that way we will be taking the fight to the prosecution rather than having to defend against the objections." *Id*.  He also noted that, "A week or so ago Phyllis and I discussed this again because the judge has not yet ruled. If he continues to delay, we are considering filing a reply memorandum just to force the issue, but not one that requires us to lay out a blue print of the case." *Id*.  Lorenzi concluded that he will see Mann on September 15, 2001, and invited the defendant to "get in touch with one of us if there is anything in particular you want us to be able to discuss when we meet." *Id*.

Petitioner's retained counsel fully informed him of this decision and openly stated that this was being done to achieve a strategic advantage over the State. They invited comment from the petitioner on the matter, or any other. The petitioner submits no proof that he protested this decision

or that he either sought new counsel in his case or notified the trial court or District Attorney that he did not support the tactic. The petitioner repeats the assertion "that he spent 22 years in solitary confinement" and his only "regular contact to the outside world was his advocate and friend, Claudia Whitman, who runs a non-profit organization aimed at assisting individuals sentenced to death." Doc. 1, att. 1, p. 19.  The Respondent notes that the petitioner submitted no evidence to support his claim regarding solitary confinement, or to show why he was allegedly placed in this extreme administrative confinement for such a long period. The Respondent also points to numerous documents written by the petitioner during the period when he was allegedly remanded to solitary confinement (doc. 12, att. 5, pp. 26-33,50,151), emails to and from petitioner's attorneys (*id*. at pp. 35,50,148,152-212), and several writs of mandamus and other motions while petitioner was confined on death row, despite his assertion that he was, essentially incommunicado. (doc. 12, att. 3, pp. 338,339,343, 349,359).  All bolster the Respondent's position that petitioner was actively participating in his case, even prior to the filing of his application for post-conviction relief

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Strickland's claims are therefore procedurally barred from review by this federal court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule

concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).

### b. *Fundamental Miscarriage of Justice*

Finally, in order for a habeas corpus petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478 (1986). To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir.1998); *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir. 1996), *cert. denied*, 519 U.S. 1017 (1996) *quoting McClesky v. Zant*, 499 U.S. 467, 495 (1993). Petitioner has not shown as a factual matter that he is actually innocent of the crimes of which he was convicted, and thus he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claims. Accordingly, petitioner cannot avoid procedural default.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in chambers this 30th day of September, 2025.

_____
THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE